## Louis W. Lucas v. People of the State of Illinois.

1. FALSE REPRESENTATIONS—*Secs. 96 and 97, Chap. 38, R. S., Construed.*—The court holds that Sec. 96 of the Criminal Code was not intended to include cases where the defrauded party parts with his money as a loan, but that where a loan is procured by the false representations of the borrower as to his solvency, the case falls within section 97, provided the representations are in writing.

Indictment, for false pretenses. Error to the Circuit Court of Mc-Lean County; the Hon. R. A. RUSSELL, Judge, presiding. Heard in this court at the November term, 1897. Reversed and remanded with directions. Opinion filed June 3, 1898.

S. P. ROBINSON and TIPTON & TIPTON, attorneys for plaintiff in error.

ROBERT L. FLEMING, state's attorney, for defendant in error; O. R. TROWBRIDGE and J. A. BOHRER, of counsel.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

The plaintiff in error was tried and convicted upon the following indictment:

STATE OF ILLINOIS, }
  McLean County.   } ss.

Of the February term of the McLean County Circuit Court, in the year of our Lord, one thousand eight hundred and ninety-seven. The grand jurors chosen, selected and sworn in and for the county of McLean in the name and by the authority of the people of the State of Illinois, upon their oaths present that Louis W. Lucas, late of said county, on the 10th day of December in the year of our Lord, one thousand eight hundred and ninety-five, at and within said county of McLean and State aforesaid, applied to one Mrs. E. D. Metcalf for the loan to him, said Louis W. Lucas, of the sum of one hundred dollars; and he, the said Louis W. Lucas, then and there requested that the said Mrs. E. D.

Metcalf should then and there loan to him, the said Louis W. Lucas, the said sum of one hundred dollars for one year, with interest at the rate of seven per cent per annum, and that the said Mrs. E. D. Metcalf should then and there take and accept as evidence of the said loan the unsecured promissory note in the usual form, of him, the said Louis W. Lucas. And the said Louis W. Lucas, with intent to cheat and defraud the said Mrs. E. D. Metcalf and for the purpose of obtaining the said loan of said sum of money upon the terms aforesaid and upon his unsecured promissory note as aforesaid, then and there represented and falsely pretended to the said Mrs. E. D. Metcalf that he, the said Louis W. Lucas, was then and there in solvent circumstances, and was then and there abundantly able to pay the said obligation and all other obligations by him then and there owing, and that he then and there owned and held in his own name a certain property at and within said county, on which said property he, the said Louis W. Lucas, then and there resided, of the value of, to wit, three thousand dollars, and that he then and there owned and held in his own name certain other real estate situate in said county and State aforesaid, of the value of, to wit, one thousand dollars; and the said Louis W. Lucas then and there represented and falsely pretended to the said Mrs. E. D. Metcalf that all the said real estate was then and there free and clear of all incumbrances; by means of which said false representations and pretenses the said Louis W. Lucas did then and there unlawfully, knowingly and designedly obtain from Mrs. E. D. Metcalf the sum of one hundred dollars, lawful money of the United States of America, of the goods and chattels of the said Mrs. E. D. Metcalf, with intent then and there to cheat and defraud said Mrs. E. D. Metcalf of the same; whereas in truth and in fact the said Louis W. Lucas was not then and there in solvent circumstances, and was not then and there able to pay the said obligation and all other obligations by him then and there owing; and whereas, in truth and in fact the said Louis W. Lucas did not then and there own and hold in his own name a certain property at and

within said county, on which property he, the said Lucas,
then and there resided, and that he did not then and there
own and hold in his own name certain other or any other
real estate situate in said county and State aforesaid, so
falsely represented and pretended as aforesaid, as the said
Louis W. Lucas then and there well knew, contrary to the
form of the statute in such case made and provided, and
against the peace and dignity of the same people of the
State of Illinois.

ROBERT L. FLEMING,<br>
State's Attorney in and for said McLean County.

In the view taken by us, it is unnecessary to consider in
this opinion any of the alleged errors except the refusal of
the court to quash the indictment.

It is claimed by the state's attorney that the indictment
is based upon section 96 of our Criminal Code, the first sec-
tion relating to false pretenses. Hurd's Revised Statutes,
564.

It is contended by the plaintiff in error that the charge
made against him in the indictment is obtaining credit from
Mrs. Metcalf by means of false representations as to his
solvency, whereby she was defrauded of her money; and that
such an offense falls within section 97 and not within sec-
tion 96 of the Criminal Code under the heading of "False
Pretenses."

Under the heading of "False Pretenses," section 96 pro-
vides that "Whoever, with intent to cheat or defraud
another, designedly * * * by any false pretense obtains
the signature of any person to any written instrument, or
obtains from any person any money, personal property or
valuable thing, shall be fined." etc. Section 97 provides that
"Whoever, by any false representations in writing, signed
by him, of his own respectability, wealth, or mercantile
correspondence or connections, obtains credit and thereby
defrauds any person of money, goods, chattels, or any
valuable thing * * * shall be sentenced," etc.

It is clear that a good indictment for obtaining credit by
means of false representation must aver that the false rep-
resentation was in writing.

The turning point as to this indictment, therefore, is as to whether the transaction between the plaintiff in error and Mrs. Metcalf was the obtaining of credit from her, or was it an offense coming within the contemplation of section 96.

If it was the obtaining of credit, although the effect of it was to defraud her of her money, it would not be an offense under section 96, because the legislature has specifically made the obtaining of credit by false representation an offense under the other section.

That is practically conceded by the state's attorney. He contends, however, that, " Primarily, Lucas obtained from Mrs. Metcalf money, and not credit."

But the money was obtained by means of, and a result of the credit. The word credit, derived from the Latin *credere*, to trust, is here used in its commercial sense. It is the confidence reposed in the ability and intention of a purchaser or borrower to make payment at some future time, either specified or indefinite. When a merchant sells his wares upon an expressed or implied promise that the purchaser will pay for them at some future time, he gives credit. When the banker or broker lends money upon the promise of the borrower to repay it at some future time he thereby gives credit. It may be given because of the reputation or representations for solvency and honesty of the purchaser or borrower or because of tendered and approved security. It is against the obtaining of it by false representation, whereby the seller or lender is defrauded of his money or goods, that section 97 is directed.

The state's attorney contends that section 97 was intended to apply only to cases where credit was sought and obtained in mercantile transactions, as between customer and merchant, retailer and jobber, and the like—and that it should be confined to such cases. Such construction would do great violence to the language employed, and, as we conceive, to the spirit of the legislation. As we view it, the proper construction to place upon the two sections is that section 96 was intended to include cases where the defrauded party

parted with his money in some other sense than as a loan, and that where the loan was procured by the false representation of the borrower as to his solvency, the case falls within section 97, provided the representation was in writing, of course.

In this case Lucas, by his false representation, caused Mrs. Metcalf to repose confidence in his solvency.

By falsely representing his "wealth" he "obtained credit" from her. His false representation as to his solvency and ownership of real estate was made for the purpose of "obtaining credit."

The motion to quash the indictment should have been sustained.

The judgment of conviction will be reversed and the cause remanded with instructions to the County Court to sustain the motion to quash the indictment.

Reversed and remanded.